UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| WELLS FARO BANK, NATIONAL ASSOCIATION, | |
|---|---|
| Plaintiff, | Action No. 3:10−CV−411 |
| v. | |
| JOHN BRENT SMITH and TRIO ENTERPRISES, | |
| Defendants. | |

MEMORANDUM OPINION

This matter is before the Court on Plaintiff Wells Fargo Bank, National Association's ("Wells Fargo") Motion to Dismiss Defendant's Counterclaim (Docket No. 10). For the reasons stated below, the Court GRANTS Wells Fargo's Motion.

I. Statement of the Case

Wells Fargo asserts a single state-law breach of contract claim against Defendants Jon Brent Smith ("Smith") and Trio Enterprises Group, Ltd. ("Trio"), claiming both Smith and Trio have defaulted on five credit agreements. According to Wells Fargo's Complaint and accompanying exhibits, Wells Fargo entered into five loan agreements with Trio and Smith between July 10, 2007, and January 23, 2008.[1] Each of these agreements names Trio as primary

---

[1] The complaint lists the following credit agreements: (1) $25,000 line of credit, dated July 10, 2007; (2) $243,750 promissory note, dated August 14, 2007; (3) $132,500 line of credit, dated September 26, 2007; (4) $580,000 promissory note, dated November 7, 2007; (5) $117,000 line of credit, dated January 23, 2008.

1

obligor, and accompanying each agreement is an "Unconditional Guaranty" ("guaranty") naming Smith as guarantor in the case of a Trio default. In an apparent attempt to avoid personal liability under the agreements, Smith signed "Sec" next to his name on the August 14, 2007 guaranty ("second guaranty") and "Pres" next to his name on the November 7, 2007 promissory note and guaranty ("fourth guaranty").

Wells Fargo claims both Trio and Smith defaulted on all five obligations in late 2008. The three parties entered into a forbearance agreement in February 2009. Smith made three payments under the forbearance agreement through May of that year, after which the payments stopped. Wells Fargo obtained Entry of Default from this Court against Trio on October 20. The bank now seeks a judgment enforcing the agreements against Smith.

Smith, proceeding *pro se*, asserts a fraud counterclaim against Wells Fargo. Smith claims he made the forbearance payments "under coercion, fraud, misrepresentation and duress." (Answer 14 ¶ 1.) He argues a Wells Fargo employee defrauded him into guaranteeing the second and fourth credit agreements. Smith seeks reimbursement for the three forbearance payments. He also requests $5,730 in "economic" punitive damages for "expenses and lost wages" he incurred by defending himself, as well as $350,000 in "noneconomic" punitive damages resulting from the expense and mental suffering Wells Fargo's action has caused. (Answer 15 ¶¶ 3-4.) Wells Fargo moves to dismiss the counterclaim on several grounds, discussed below.

II. Standard of Review

A motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Fed R. Civ. P. 12(b)(6)(2009); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Thus, in deciding a Rule 12(b)(6)

motion, a court must accept all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007), as well as provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

Though a motion to dismiss challenges the legal sufficiency of a claim, Rule 8 requires a plaintiff to allege facts showing the claim's plausibility. Fed. R. Civ. P. 8(a)(2) (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n. 3 (2007). The court need not accept legal conclusions couched as factual allegations, *Id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Smith's counterclaim implicates two specialized pleading rules. First, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b) (2009). The "circumstances constituting fraud" include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).[2]

Second, Smith is proceeding *pro se*. Therefore, this Court must construe a claim submitted by a pro se litigant liberally and hold it to a less stringent standard than would be applied to a pleading drafted by a lawyer. *Erickson*, 551 U.S. 89, 94 (2007) (citation omitted); *Laber v. Harvey*, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

---

[2] The Fourth Circuit discourages a court from dismissing a fraud claim when (1) the claim defendant "has been made aware of the particular circumstances for which she will have to prepare a defense at trial" and (2) the claim plaintiff has "substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. This dictum does not prohibit the Court from dismissing Smith's fraud claim, since Smith's claim fails as a matter of law for several reasons unrelated to the particularity of Smith's claim and unrelated to the amount of evidence in Smith's possession.

3

III. <u>Analysis</u>

Smith claims Wells Fargo defrauded him into making three forbearance payments. Virginia law recognizes the tort of fraud where a party induces another to enter into a contract. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999). A party laying a claim for fraud must allege (1) a false representation (2) of a material fact (3) made intentionally and knowingly (4) with intent to mislead (5) on which the party relied (6) resulting in damage to the misled party. *State Farm Mut. Auto. Ins. v. Remley*, 270 Va. 209, 618 S.E.2d 316, 321 (Va. 2005). The allegedly defrauded party's reliance must be reasonable. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999). A fraud claim arising out of a party's entry into a contract is unreasonable when the allegedly defrauded party fails to read or understand the contract at issue. *Clemons v. Home Savers, LLC*, 530 F.Supp.2d 803, 811 (E.D.Va. 2008) But even where the terms of a contract are clear, a fraud claim can withstand legal attack where the defrauded party alleges the counterparty essentially "duped" him into entering the agreement with a factual misrepresentation. *Nahigian v. Juno Loudon LLC*, 684 F.Supp.2d 731, 740 (E.D.Va. 2010).

    A. *Wells Fargo's alleged misrepresentation concerned the legal effect of a written instrument*.

Smith's counterclaim fails first because the alleged misrepresentation upon which his claim relied concerned the legal effect of a contract. According to Smith, Wells Fargo misrepresented his obligations under the second and fourth credit guaranties. At the instruction of Kent Gravely, a Wells Fargo employee, Smith signed "Pres" and "Sec" next to his name on the second and fourth guaranties. These marks intended to give notice Smith was signing the

4

guaranties in his corporate capacity, thereby shielding him from personal liability under the guaranties.

Smith's counterclaim first fails because the employee's alleged statements misstated the legal effect of the guaranties. An essential element of a fraud claim is a misstatement of fact. *State Farm*, 270 Va. at 219. A fraud claim cannot rest on a misstatement of the legal effect of a contract, since "[t]he truth or falsehood of such a representation can be decided by ordinary vigilance and attention." *Hicks v. Wynn*, 137 Va. 186, 119 S.E. 133, 137 (Va. 1923). *See Cars Unlimited II, Inc. v. Nat'l Motor Co., Inc.*, 472 F.Supp.2d 740, 745-46 (E.D.Va. 2007).

Smith's statements were statements of the contracts' legal effect and not statements of fact. By asserting Smith would evade personal liability under the second and fourth guaranties by appending "Sec" and "Pres" to his signature, Gravely claimed that the second and fourth guaranties would have the particular legal effect of binding Smith only in his corporate capacity. These statements of legal effect directly contradicted the terms of the guaranties, which state:

> Guarantor hereby absolutely, irrevocably, and unconditionally guarantees to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of Borrower to Bank and its affiliates . . . however and whenever incurred or evidenced . . . (collectively, the "Guaranteed Obligations").
> * * * * *
> This Guaranty is a continuing and unconditional guaranty of payment and performance and not of collection. The parties to this Guaranty are jointly and severally obligated together with all other parties obligated for the Guaranteed Obligations.

(Compl. Ex. D.) Since the guaranties' terms contradicted Gravely's statements, Smith could have assessed "[t]he truth or falsehood of [the] representation . . . by ordinary vigilance and attention." *Hicks*, 137 Va. 186, 119 S.E. at 137.

    B. *Smith's reliance was unreasonable.*

5

Second, Smith's reliance on Gravely's alleged statements was unreasonable. Where a party claims a counterparty defrauded him into entering into a contract, Virginia law requires the allegedly defrauded party to plead, and ultimately prove, his reliance was reasonable. *Hitachi*, 166 F.3d at 629. Smith should not have relied on Gravely's statements. The guaranties list Smith's name and address and identify him personally as "Guarantor." These guaranties also contain the language clearly stating that the guarantor would be personally liable on the accompanying credit agreements. Furthermore, the guaranties contained "merger clauses," stating that the terms of the guaranties

> may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties. There are no unwritten agreements between the parties.

(Compl. Ex. D at 5.) The contract language renders Smith's reliance unreasonable, because Smith had access to the materials—namely, the terms of the second and fourth guaranties—disproving Gravely's assertions.

C. *Smith ratified his obligations and released claims against Wells Fargo by signing the forbearance agreement.*

Third, Smith ratified each credit agreement, including the ones allegedly induced by fraud, by making payments under the forbearance agreement. In Virginia, a party may release his claims against another by contract provision. *Penn. Life Ins. Co. v. Bumbrey*, 665 F.Supp. 1190, 1194-95 (E.D. Va. 1987). The release is valid if the parties signed and executed it to settle a dispute and consideration was given in return for the release. *Id.*

Smith released his claims against Wells Fargo by signing and making payments under the forbearance agreement. The forbearance agreement is personalized to Trio and Smith as

obligors.³ Smith signed the forbearance agreement and admits making three payments under it.⁴ The agreement catalogues the five credit agreements and states "Smith is liable for all of the above-referenced debts pursuant to the Unconditional Guaranties executed in connection with the transactions." (Compl. Ex. L at 1 ¶¶ 1-6.) The agreement also states the Bank declines to exercise remedies with respect to the five defaulted agreements in consideration for Smith's obligations under the agreement.⁵ It further states the obligors "have not relied upon any statement . . . of any kind made by the Bank or any of its employees or agents, except for the agreements set forth herein." (Compl. Ex. L at 2-3 ¶¶ 1, 8.) The forbearance agreement includes a pledge by the obligors to

> absolutely and irrevocably release the Bank . . . from any and all claims, rights, demands, suits, causes of action . . . of every kind or nature . . . arising out of or relating to any statements . . . intentional, willful, negligent or innocent, in connection with the Loan Documents, the Obligations, or this Agreement.

(Compl. Ex. L at 4, ¶ 10.) These characteristics of the forbearance agreement demonstrate Smith released his claims against Wells Fargo regarding the second and fourth guaranties when he signed and made payments under the agreement.

Since Smith willingly entered the forbearance agreement, his claim for punitive damages fails. Virginia law readily permits waivers of punitive damages. *Silver v. JTH Tax, Inc.*, 2005 WL 1668060 at *7 (E.D. Va. June 21, 2005). The party seeking to prove the invalidity of the

---

³ Smith argues the forbearance agreement is adhesive, but it is not. An adhesive contract is a "standard form contract, prepared by one party and presented to a weaker party—usually, a consumer—who has no bargaining power and little or no choice about the terms." *Senture, LLC v. Dietrich*, 575 F.Supp.2d 724, 727 n. 1 (E.D.Va. 2008). The forbearance agreement is not "standard form"; it is prepared specifically to supersede the five credit agreements Trio and Wells Fargo entered.
⁴ In spite of his claim that collection agents pressured him into entering the agreement, he fails in claiming he did not sign the agreement willingly. *Goode v. Burke Town Plaza, Inc.*, 436 S.E.2d 450, 452-53 (Va. 1993) ("[A]pplication of economic pressure by threatening to enforce a legal right . . . cannot constitute duress.").
⁵ Consideration supported the forbearance agreement. Wells Fargo pledged to decline to exercise remedies with respect to the five defaulted agreements in consideration for Smith's obligations under the agreement. *See Hamm v. Scott*, 515 S.E.2d 773, 774 (Va. 1999) ("A promise to forbear the exercise of a legal right is adequate consideration to support a contract.").

waiver is charged with proving he agreed to the waiver unwillingly. *Id*. The forbearance agreement included a waiver of claims for punitive damages.[6] For reasons stated above, Smith cannot prove the damages waiver is invalid. Since Smith willingly entered into the forbearance agreement, this language prohibits him from seeking punitive damages.

IV. Conclusion

For the reasons stated above, Smith's fraud counterclaim fails as a matter of law. The Court GRANTS Wells Fargo's Motion to Dismiss.

An appropriate Order shall issue.

/s/<br>
James R. Spencer<br>
Chief United States District Judge

ENTERED this   5th   day of November 2010

---

[6] "Each of the parties hereby expressly waives any right or claim to punitive or exemplary damages they may have or which may arise in the future in connection with any such proceeding, claim or controversy[.]" (Compl. Ex. C 5-6.)